UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARMEN ANA DEJESUS,

                                Plaintiff,

        v.                                          Case # 18-CV-6174-FPG
                                                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

## INTRODUCTION

Plaintiff Carmen Ana DeJesus brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Plaintiff protectively applied for DIB and SSI on December 18, 2014, alleging disability based on a variety of physical and mental conditions. Tr.[1] 218, 242. After the Social Security Administration ("SSA") denied her application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 32-62. On July 11, 2017, the ALJ issued an unfavorable decision. Tr. 10-26. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed it to this Court. Tr. 1-5; ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 16. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

**LEGAL STANDARD**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## DISCUSSION

### I.      The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 25, 2014, the alleged onset date.  Tr. 15.  At step two, the ALJ found that Plaintiff has several severe impairments, including knee dysfunction.[2]  Tr. 15.  At step three, the ALJ found that none of Plaintiff's impairments meet or medically equal the criteria of any Listings impairment and determined that Plaintiff retains the RFC to perform light work with additional restrictions.  Tr. 15-24.  At step four, the ALJ found that Plaintiff is not able to perform any past relevant work, and at step five, he found that she can adjust to other work that exists in significant numbers in the national economy.  Tr. 24-25.  Accordingly, the ALJ found that Plaintiff is not disabled.  Tr. 31.

### II.      Analysis

Plaintiff argues that the ALJ erred in finding that she could perform light work despite her knee impairment.  Specifically, she contends that the ALJ improperly relied on a "stale" opinion that her treating orthopedist, Dr. Robert Little, rendered before he performed surgery on Plaintiff's knee, and that the ALJ should have developed a post-surgical opinion.  The Court agrees.

#### A.  Background

Plaintiff first visited Dr. Little for right knee pain on February 26, 2015 after suffering a fall the month before.  Tr. 585.  Dr. Little examined Plaintiff and found some tenderness, a mildly positive patellar grind test, and a mildly positive McMuarry's test, but no swelling, ligamental instability, or pain with a gentle range of motion.  Tr. 586.  He diagnosed "right knee pain after

---

[2] Plaintiff fell and injured her knee in January 2015, after she applied for benefits, so she did not list any knee impairments on her application and her knee impairment does not correspond to her June 2014 alleged onset date.

3

injury suspicious for meniscal pathology" and ordered an MRI. *Id.* The MRI came back negative for a meniscal tear. Tr. 587. Nevertheless, Plaintiff continued to see Dr. Little for knee pain.

On March 20, 2015, Dr. Little observed some tenderness and a positive patellar grind test, but otherwise unremarkable examination findings. Tr. 589. He told Plaintiff she had a bony contusion (i.e. a bone bruise) and explained that contusions can take a while to heal. *Id.* He referred her to physical therapy. *Id.*

On May 21, 2015, Dr. Little administered a cortisone injection and again counseled Plaintiff regarding the lengthy healing time for bony contusions. Tr. 591.

On June 5, 2015, Dr. Little completed a Physical Assessment for Determination of Employability for Monroe County. Tr. 389. He opined that Plaintiff had a contusion, that she had no functional restrictions, and that her prognosis was good. Tr. 391-92.

On July 8, 2015, Dr. Little again diagnosed a bony contusion. Tr. 592. He indicated in his treatment notes that "I believe in time things will quiet down. She may have some residual deficits but I would not recommend any further intervention other than conservative care. I really have nothing more to offer her surgically." Tr. 593.

On September 11, 2015, Dr. Little administered another cortisone injection and diagnosed right knee pain. Tr. 595.

On May 6, 2016, Dr. Little administered another cortisone shot and diagnosed right knee pain with chondromalacia.[3] Tr. 597. He noted that "in the past she has tried and failed many conservative measures including various oral anti-inflammatories, cortisone injections, and physical therapy [but s]he continues to be symptomatic . . . ." *Id.*

---

[3] "Chondromalacia patella (knee pain) is the softening and breakdown of the tissue (cartilage) on the underside of the kneecap (patella). Pain results when the knee and the thigh bone (femur) rub together." *Knee Pain (Chondromalacia Patella)*, CLEVELANDCLINIC (last updated Oct. 6, 2014) https://my.clevelandclinic.org/health/diseases/15607-knee-pain-chondromalacia-patella.

On October 17, 2016, Dr. Little noted that Plaintiff "continues to have difficulty despite the fact that her MRI scan is negative. Given the fact that it is negative but she is in this intense pain, I really do not have much more to offer her. Her knee behaves as if she has a torn meniscus . . . ." Tr. 599. He told Plaintiff that she could consider an arthroscopic evaluation of her knee. Tr. 600. He assessed Plaintiff with intra-articular pathology of the right knee and indicated that he could not "explain why her MRI is negative but [that he was] very suspicious for underlying meniscus pathology." *Id.* Plaintiff elected to proceed with the arthroscopy. *Id.*

On November 11, 2016, Dr. Little performed that arthroscopic surgery on Plaintiff's right knee. Tr. 603. His post-operative diagnosis was "grade 2 chondral damage of medical femoral condyle and thickened medial synovial plica." *Id.*

At her first post-operative visit on December 1, 2016, Plaintiff reported some discomfort and stiffness in her knee. Tr. 606.

On January 30, 2017, Plaintiff reported continued pain and was given another cortisone injection. Tr. 608. Dr. Little prescribed Tylenol, ice, rest, and physical therapy. *Id.*

On March 28, 2017—the last day of treatment notes in the record—Dr. Little noted that Plaintiff continued to have significant pain and stiffness in her right knee. Tr. 612. There was mild swelling and she was tender to the touch. *Id.* She could extend her leg, but it was uncomfortable. *Id.* There was crepitence and discomfort with flexing. *Id.* She had a positive patellar grind test, a negative anterior drawer, and negative McMurray test. *Id.* Dr. Little encouraged Plaintiff to continue with physical therapy and use ice and Tylenol. *Id.*

**B. The ALJ's Decision**

In determining that Plaintiff retained the RFC to perform light work, the ALJ relied on Dr. Little's June 5, 2015 opinion indicating that she had no functional restrictions related to her right

knee. Tr. 22. The ALJ explained that he gave Dr. Little's opinion great weight because it came from a treating source and was consistent with the record evidence, particularly the negative MRI results and insignificant clinical findings upon physical examination. *Id.*

However, Dr. Little's June 2015 opinion was stale. Plaintiff continued to treat with Dr. Little for over a year after he rendered this opinion. When Dr. Little rendered his June 2015 opinion, he was under the impression that Plaintiff merely had a bruised bone, but as time went on, he expressed "suspicion[n] for underlying meniscus pathology." Tr. 600. After the surgery, Dr. Little diagnosed Plaintiff with "grade 2 chondral damage of medical femoral condyle and thickened medial synovial plica," Tr. 603, but he never rendered an opinion explaining how this diagnosis impacted Plaintiff's functional capabilities. And although his examination findings continued to be unremarkable, Dr. Little expressed confusion as to why Plaintiff's MRI findings were negative when she continued to experience pain and indicated the "her knee behaves as if she has a torn meniscus . . . ." Tr. 599.

Moreover, Dr. Little's June 2015 opinion was inconsistent with another medical opinion in the record. On January 30, 2015, shortly after Plaintiff had fallen and injured her knee, consultative examiner Dr. Harbinder Toor examined Plaintiff and opined that she was very limited in her ability to stand and walk. Tr. 349. Dr. Toor examined her again on February 10, 2015 and opined that she was moderately to severely limited in her ability to stand and walk due to her recent fall, but that she could be evaluated again in a few months after recovering. Tr. 363.

The ALJ rejected Dr. Toor's opinions because they came from a consultative examiner rather than a treating physician, reflected Plaintiff's post-injury status, and "lacked the longitudinal perspective of how the claimant's functionality improved upon treatment." Tr. 21. None of these reasons are persuasive. First, at the time Dr. Little rendered his June 2015 opinion, he had only

examined Plaintiff three times compared to Dr. Toor's two times, so Dr. Toor's status as a consultative rather than treating physician is not particularly relevant. Second, Dr. Little first examined Plaintiff only a couple weeks after Dr. Toor examined her, so her condition had not had a significant chance to improve by that time. Third, the ALJ discounted Dr. Toor's opinion as "lacking the longitudinal perspective of how [Plaintiff's] functionality improved upon treatment," but by the time Dr. Little rendered his June 2015 opinion, Plaintiff's functionality had *not* improved. And despite the fact that Plaintiff went on to visit Dr. Little at least eight more times between July 2015 and March 2017, during which period she did physical therapy, received cortisone shots, and had surgery, the ALJ never obtained an updated opinion from Dr. Little reflecting his "longitudinal perspective" of how Plaintiff's functionality was impacted by all of these treatments.

At the time Dr. Little rendered his June 2015 opinion, he thought Plaintiff had a bruised bone that would heal in time and thus assessed no functional restrictions. It is not clear that Dr. Little would have rendered the same opinion after treating Plaintiff for over a year and a half without seeing any improvement. He *may* have, in light of the minimal objective evidence explaining Plaintiff's pain, but the record is silent. The Court finds that Dr. Little's June 2015 opinion based on his early examinations of Plaintiff and rendered approximately a year and a half before he performed surgery does not constitute substantial evidence to support the ALJ's RFC determination. *See Pagano v. Comm'r of Soc. Sec*., No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding."); *Girolamo v. Colvin*, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery); *Jones v. Comm'r of*

*Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at \*2 (E.D.N.Y. Aug. 22, 2012) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition").

Because the Court remands for the reasons discussed above, it declines to reach Plaintiff's other arguments.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g); § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 29, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court